# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JERRY LEWIS GULLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 1754 |
| | ) |
| PARTHASARATHI GHOSH, MD, | ) Judge Ruben Castillo |
| RICHARD SHUTE, MD, and | ) |
| MICHAEL F. MASSA, MD, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Jerry Gulley brings this action under 42 U.S.C. § 1983 ("Section 1983") against Drs. Parthasarathi Ghosh ("Dr. Ghosh"), Richard Shute ("Dr. Schute"), and Michael F. Massa ("Dr. Massa") (collectively, "Defendants"), alleging violations of the Eighth Amendment. (R. 24, Am. Compl.) Presently before the Court is Dr. Ghosh's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 30, Def.'s Mot. ¶ 6.) For the reasons stated below, the motion is denied.

## RELEVANT FACTS

Gulley was incarcerated at the Stateville Correctional Center ("Stateville") on March 26, 2009. (R. 24, Am. Compl. ¶ 11.) Prior to his incarceration, Gulley developed a heart condition that required the implantation of a pacemaker. (*Id.* ¶ 12.) After the implantation of the pacemaker, Gulley required daily medication for his heart condition. (*Id.* ¶ 13.) Gulley also suffers from sciatica, a medical condition that causes chronic pain to radiate along the sciatic nerve through his legs and back. (*Id.* ¶ 16.) Prior to his arrest and incarceration, Gulley's sciatica was being successfully treated by his personal physicians, Dr. Robin Spencer ("Dr.

Spencer") of OSF Medical Group in Rockford, Illinois, and Dr. Frederick Gahl ("Dr. Gahl") of the Rockford Pain Center. (*Id.* ¶ 17.) Dr. Spencer prescribed Gulley with Elavil, a medication to treat his sciatic nerve damage and to help manage his pain, approximately sixteen years prior to Gulley's incarceration. (*Id.* ¶ 18.) Dr. Spencer also referred Gulley to Dr. Gahl, and Dr. Gahl administered further sciatic treatment to Gulley, including steroid injections. (*Id.* ¶ 19.)

On April 6, 2006, Gulley was arrested and placed in the Winnebago County Jail. (*Id.* ¶ 20.) At this time, his daily dose of Elavil was 150 mg. (*Id.*) Gulley continued to take 150 mg of Elavil and to receive treatment from Dr. Gahl until he was transferred to Stateville on March 26, 2009. (*Id.* ¶ 22.)

Upon entering Stateville, Gulley notified Drs. Ghosh and Massa that he suffered from sciatica and had been prescribed 150 mg of Elavil in order to treat this condition. (*Id.* ¶ 23.) Gulley also authorized Drs. Spencer and Gahl to share his medical information with Drs. Ghosh and Massa and other Stateville medical personnel. (*Id.* ¶ 24.) Dr. Massa, however, denied Gulley's request for the medication, and ordered the medical staff to withhold the administration of Elavil from Gulley. (*Id.* ¶ 26.) Instead, Dr. Massa prescribed Gulley with 50 mg of Trazodone, a tetracyclic antidepressant. (*Id.* ¶ 27.) It is not clear whether Dr. Massa prescribed Trazadone to treat Gulley's depression, sciatica, or some other condition, but it failed to alleviate Gulley's sciatic pain and caused him to suffer bouts of a racing heartbeat and sweating, and a frequent inability to sleep. (*Id.* ¶ 29.) After suffering these complications for about a month, Gulley stopped taking the Trazadone medication. (*Id.* ¶ 30.) During this time, Gulley requested that Dr. Massa reinstate Elavil, but Dr. Massa refused. (*Id.* ¶ 31.) Dr. Massa stopped working at Stateville around April 2009. (*Id.* ¶ 32.)

Dr. Ghosh assumed Gulley's treatment after Dr. Massa's departure in April 2009. (*Id.* ¶ 33.) At that time, Gulley requested that Dr. Ghosh reinstate his prescription for Elavil and requested an appointment with a neurologist. (*Id.* ¶ 35.) Dr. Ghosh initially refused these requests, which left Gulley without any alternative medication or treatment until October 2009. (*Id.*) In the absence of medication or treatment, Gulley suffered severe and debilitating nerve pain that made it extremely difficult for him to walk, move, or sleep. (*Id.* ¶ 36.) Despite repeated verbal and written complaints to Dr. Ghosh, Gulley received no treatment for his sciatic condition for six months. (*Id.* ¶ 37.)

Around September 2009, Dr. Ghosh prescribed Elavil to Gulley at a dosage rate of 25 mg per day. (*Id.* ¶ 38.) This dosage rate is one-sixth the amount Gulley had previously taken for approximately sixteen years before arriving at Stateville. (*Id.* ¶ 39.) Dr. Ghosh simultaneously prescribed 50 mg of Tramadol, an opioid analgesic intended to treat pain. (*Id.* ¶ 40.) Dr. Ghosh told Gulley that he was prescribing Elavil because it was cheaper than sending him to an outside neurologist. (*Id.* ¶ 41.) This dosage rate of 25 mg of Elavil and 50 mg of Tramadol did nothing to alleviate Gulley's sciatic nerve pain. (*Id.* ¶ 42.)

Dr. Ghosh informed Gulley around October 3, 2009, that he would schedule an appointment with a neurologist located at the University of Illinois at Chicago. (*Id.* ¶ 43.) Gulley did not visit a neurologist until around October 6, 2010. (*Id.* ¶ 45.) This delay in treatment caused extended pain and exacerbated the damage to his sciatic nerve. (*Id.*) On October 6, 2010, the UIC neurologist administered an epidural steroid to temporarily relieve Gulley's sciatic pain. (*Id.* ¶ 46.) The severe pain resurfaced when the injection wore off. (*Id.* ¶ 47.)

After Dr. Ghosh left his position as Medical Director of Stateville, Dr. Shute assumed the role overseeing Gulley's treatment. (*Id.* ¶ 49.) Gulley continues to receive only 25 mg of Elavil and 50 mg of Tramadol, and his intense sciatic nerve pain persists. (*Id.* ¶ 50.)

## PROCEDURAL HISTORY

Gulley filed a *pro se* complaint on March 14, 2011. (R. 1, Compl.) After being appointed counsel, Gulley filed an amended complaint (the "complaint") on August 18, 2011. (R. 24, Am. Compl.) In his complaint, Gulley presents one claim alleging that Defendants "demonstrated deliberate indifference to [his] serious medical needs through their repeated delays and, at times, outright refusal in giving [him] reasonable medical care or treatment required by a patient in [his] condition," in violation of his Eighth Amendment rights. (*Id.* ¶¶ 53-54.)

On October 3, 2011, Dr. Ghosh filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 30, Def.'s Mot.) In his motion, Dr. Ghosh argues that the complaint fails to state a claim upon which relief can be granted because it does not contain allegations that suggest that Dr. Ghosh showed deliberate indifference to Gulley's serious medical condition. (*Id.* ¶ 3.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and

the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.,* 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself could these things have happened, not *did* they happen." *Id.*

## ANALYSIS

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. Const. amend. VIII. This amendment, incorporated to apply to the states pursuant to the Fourteenth Amendment, includes a right to adequate medical care. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006). Under Section 1983, a prisoner may bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under state law. *Berry v. Peterman,* 604 F.3d 435, 439 (7th Cir. 2010).

Gulley asserts that his Eighth Amendment rights were violated because Dr. Ghosh showed deliberate indifference to his serious medical condition. To succeed on this claim, Gulley must show that: (1) he suffered from an objectively serious medical condition; and (2) Dr. Ghosh was deliberately indifferent to that condition. *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006) (citing *Zentmyer v. Kendall County,* 220 F.3d 805, 810 (7th Cir. 2000)). Dr. Ghosh does not dispute that Gulley's sciatica is an objectively serious medical condition. Rather, he

contends that Gulley has failed to allege facts that meet the second requirement to establish his liability—that he showed deliberate indifference to Gulley's medical condition. (R. 30, Def.'s Mot. ¶ 4.)

Because the Constitution is only implicated when the defendant has a "sufficiently culpable state of mind[,]" an inmate alleging an Eighth Amendment violation must show that the defendant acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Medical malpractice does not "become a constitutional violation merely because the victim is a prisoner," so complaints that a physician was negligent in diagnosing or treating a medication condition do not "state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Nor do "[m]ere differences of opinion among medical personnel regarding a patient's appropriate treatment give rise to deliberate indifference." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (citing *Estelle*, 429 U.S. at 107). "Medical decisions that may be characterized as 'classic examples of matters for medical judgment . . . such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal citations omitted).

Instead, deliberate indifference occurs when a prison medical official realizes that a substantial risk of serious harm to the prisoner exists, but the prison medical official disregards that risk. *Farmer*, 511 U.S. at 837; *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)). Obviously, the refusal to provide access to a doctor or the denial of necessary medical treatment constitutes deliberate indifference. *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990). Additionally, a delay in the provision of

treatment may constitute deliberate indifference if the delay unreasonably prolongs a patient's suffering. *Estelle*, 429 U.S. at 104-05; *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Even after a prison medical official has provided treatment, a prisoner has a claim for deliberate indifference if the official continues the prisoner on a course of treatment known to be ineffective. *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011); *Kelley*, 899 F.2d at 617; *Berry*, 604 F.3d at 442; *Greeno v. Daley*, 414 F.3d 742, 654 (7th Cir. 2005). A prison medical official is also deliberately indifferent if the official pursues a course of treatment based on cost rather than sound medical judgment. *Johnson*, 433 F.3d at 1013.

Here, it is clear that Gulley has sufficiently alleged that Dr. Ghosh was aware of Gulley's sciatica. Gulley informed Dr. Ghosh of his sciatica, the treatment he had been receiving for the previous sixteen years to alleviate the problem, and authorized him to access his medical records from his prior treatment. He also made repeated written and oral complaints regarding the pain caused by the sciatica. The primary issue, then, is whether Gulley has alleged facts that plausibly suggest that Dr. Ghosh acted with deliberate indifference in his response. The Court easily concludes that Gulley's allegations meet that standard.

First, Gulley has alleged facts that indicate Dr. Ghosh persisted in a course of treatment that he knew was ineffective. Gulley requested that Dr. Ghosh reinstate his prescription for Elavil in April 2009, after he used Trazodone for a month with no pain relief and with frequent negative side effects, but Dr. Ghosh refused. Several months later, Dr. Ghosh finally prescribed one-sixth of the amount of Elavil Gulley had been receiving prior to his incarceration at Stateville. But taking 25 mg of Elavil and 50 mg of Tramadol did nothing to alleviate Gulley's sciatic pain. Yet, Dr. Ghosh persisted in this course of treatment despite repeated complaints,

both verbally and in writing, from Gulley that the treatment was not relieving his pain. This sufficiently states a claim for deliberate indifference. *See Arnett*, 658 F.3d at 752 (holding that evidence that plaintiff informed prison officials that his pain medication was not working, but they persisted in that course of treatment for over ten months, which caused him substantial pain and suffering, was sufficient to state a claim); *Berry*, 604 F.3d at 441-42 ("Where [the plaintiff] made a modest request for treatment by a dentist, [the defendant's] 'obdurate refusal to alter [the plaintiff's] course of treatment despite his repeated reports that the medication was not working and his condition was getting worse' . . . is sufficient to defeat [the defendant's] motion for summary judgment.") (quoting *Greeno*, 414 F.3d at 654).

Gulley's complaint also suggests that Dr. Ghosh unnecessarily delayed treatment and based his treatment decisions on cost concerns. First, Gulley experienced six months of untreated pain between April and October 2009. Then Dr. Ghosh prescribed him a smaller dosage of Elavil that did not alleviate the pain. By the time that Gulley saw the neurologist in October 2010, he had endured over a year of intense sciatic pain. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (delays in referring inmate to dentist, to oral surgeon, and [ear, nose, and throat] specialist over the course of several months while inmate continued to suffer significant pain and his condition deteriorated was sufficient to state a claim of deliberate indifference). Additionally, Dr. Ghosh told Gulley that he finally prescribed the minimal amount of Elavil to Gulley because it would be cheaper than sending him to an outside neurologist. These allegations suggest that Dr. Ghosh pursued Gulley's course of treatment not out of sound medical judgment, but rather out of cost concerns. While the "cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care . . . medical

8

personnel cannot simply resort to an easier course of treatment that they know is ineffective." *Johnson*, 433 F.3d at 1013 (internal citations omitted).

Seeking to avoid this result, Dr. Ghosh contends that his actions as alleged did not constitute deliberate indifference, but rather a difference of opinion among medical professionals regarding Gulley's treatment. (R. 30, Def.'s Mot. at 2.) Perhaps if Dr. Ghosh had tried a treatment that he believed would be as effective as Gulley's previous treatment, observed that it was not, and then switched to an effective treatment, his argument might have some merit. Here, however, Dr. Ghosh knew that Gulley's sciatica had been successfully treated for sixteen years by 150 mg of Elavil yet persisted in an ineffective course of treatment for over a year. As Dr. Ghosh sees it, his decision to pursue a different course of treatment for Gulley's sciatica than Gulley's previous doctors forever immunizes that decision as a "difference of opinion," even though it became clear that his chosen course of treatment was ineffective. That cannot be the case; if it were, every deliberate indifference claim could be dismissed as a "difference of opinion." The Eighth Amendment, however, does not permit doctors to knowingly choose ineffective courses of treatment over effective ones. *See Gil v. Reed*, 381 F.3d 649, 663 (7th Cir. 2004) (where outside doctor prescribed prisoner Vicodin, but it was not on the prison formulary, the prison doctor could not simply substitute with an ineffective alternative medication; he needed to consider other more effective substitutes). Simply put, as the Seventh Circuit has repeatedly stated, "[a] prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." *Arnett*, 658 F.3d at 754 (citation omitted); *see also Greeno*, 414 F.3d at 654 ("[T]he defendants' contention that [the plaintiff's] claim fails because he received *some* treatment overlooks the possibility that the treatment [the

9

plaintiff] did receive was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition.") (quoting *Snipes*, 95 F.3d at 592). Accordingly, because Gulley's allegations plausibly suggest that Dr. Ghosh pursued a course of treatment known to be ineffective, unnecessarily delayed treatment, and based his treatment decision on cost rather than sound medical judgment, Gulley has sufficiently alleged that Dr. Ghosh acted with deliberate indifference in treating Gulley's sciatica.

## CONCLUSION

For the foregoing reasons, Dr. Ghosh's motion to dismiss (R. 30) is DENIED. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status on July 10, 2012, at 9:45 a.m. to set a firm litigation schedule.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated:** June 5, 2012